IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| LISA C.[1], | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:18-CV-203-Z-BR |
| | § | |
| NANCY A. BERRYHILL, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO AFFIRM THE DECISION OF THE COMMISSIONER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the decision of the Commissioner of Social Security, who denied her application for disability insurance benefits under Titles II of the Social Security Act for lack of disability. The issues before this Court are whether the Commissioner applied the correct legal standards and whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled within the meaning of the Act. After considering the pleadings, briefs, and administrative record, the Court RECOMMENDS that the United States District Judge AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint with prejudice.

**I.   PROCEDURAL BACKGROUND**

Plaintiff applied for disability insurance benefits on July 7, 2014, alleging disabling impairments since July 4, 2014. (Tr. 184). Plaintiff's application was initially denied and was

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies Plaintiff only by first name and last initial.

denied again upon reconsideration. (*Id*. at 11–20; 74–86). Plaintiff requested a hearing, and a hearing was held on August 1, 2017. (*Id*. at 36–73). The Administrative Law Judge ("ALJ") issued a decision on November 22, 2017 finding Plaintiff not disabled. (*Id*. at 11–20). Plaintiff requested a review of the ALJ's decision, but the Appeals Council denied this request on September 11, 2018. (*Id*. at 1–5). Therefore, the ALJ's decision is the Commissioner's final decision and properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005). Further, the relevant period is from July 4, 2014, Plaintiff's alleged disability onset date, through November 22, 2017, the date of the Commissioner's final decision. (*Id.* at 11–20; 184).

Specifically, at step one, the ALJ found plaintiff had not engaged in substantial gainful activity since May of 2014. (*Id.* at 13). At step two, the ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), and emphysema. (*Id*.). The ALJ also found Plaintiff suffers from other less severe conditions that contribute to her functional limitations: migraine headaches, anemia, obesity, and a left total hip arthroplasty. (*Id.* at 13–14). Additionally, the ALJ discussed the possibility that Plaintiff's substance abuse (specifically alcohol dependence) could affect her ability to work. (*Id.* at 16).

At step three, the ALJ found Plaintiff's severe impairments, or a combination of her severe and non-severe impairments, did not meet and were not the equivalent of any listed impairments. (*Id*. at 14). In particular, the ALJ found Plaintiff's degenerative disc disease did not meet the severity requirements under listing 1.04 "Disorders of the Spine", and Plaintiff's COPD and emphysema did not meet the severity requirements under listing 3.02 or the exacerbations or complications in listing 3.02(D). (*Id.*). In making this determination, the ALJ considered the objective evidence from Plaintiff's treatment records. (*Id.*). Still at step three, the ALJ found

2

Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work.[2] (*Id*. at 14–19). The ALJ considered Plaintiff's hearing testimony concerning her limitations, as well as the treatment records and medical source opinions. (*Id.*). At step four, the ALJ determined Plaintiff was able to return to her past relevant work, as her past relevant work was not precluded by the RFC. (*Id*. at 19–20). Accordingly, the ALJ found Plaintiff was not disabled between the alleged onset date and the date the decision was issued. (*Id*. at 20).

## II. FACTUAL BACKGROUND

Plaintiff was 52 years old on the alleged onset date, July 4, 2014. She claims she earned a general equivalency diploma and has previously worked as a customer service clerk, receptionist, data entry person, and claims clerk. (*Id.* at 19–20; 66–68; 188–90; 197–207). In her application for disability benefits, Plaintiff indicated she stopped working for non-medical reasons; specifically, she stated her husband had accepted a job in a new state and after relocating "she had not found work." (*Id.* at 187–188).

Plaintiff believes her physical impairments render her disabled under the Social Security Act. Plaintiff primarily focuses on her degenerative disc disease diagnosis and challenges the ALJ's determination that she does not meet all the requirements for listing 1.04. (Pl's Br., ECF 14; Pl's Reply, ECF 19). Her briefing primarily cites to her treatment records in the transcript regarding her spinal condition and resultant limitations. (*Id.*). Plaintiff argues the medical records establish she has "nerve root compression" and "lumbar spinal stenosis," sufficient to qualify as a severe impairment under the listing. (*Id.*).

---

[2] The ALJ provided additional specifics to Plaintiff's sedentary RFC, with the following limitations: unlimited sitting; stand and walk for six hours in an eight-hour workday; frequent overhead and all reaching bilaterally; occasional climbing of ramps and stairs; never climbing ladders, ropes and scaffolds; occasional stoop, kneel, crouch and never crawl; avoid concentrated exposure to dusts, odors, fumes, pulmonary irritants, and extreme cold and heat. (Tr. At 14).

### III.     STANDARD OF REVIEW

To evaluate a disability claim, the Commissioner follows a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

A person is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382(c)(a)(3)(A), 423(d)(1)(A) (2012). " 'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); 20 C.F.R. § 404.1572(a)–(b). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps four and five, the Commissioner must assess a plaintiff's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a plaintiff] can still do despite [the plaintiff's] limitations." 20 C.F.R. § 416.945(a)(1).

In reviewing disability determinations by the Commissioner, the Court's role is limited to determining (1) whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and ultimate decision, and (2) whether the Commissioner applied the correct legal standards or if any errors of law were made. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). To determine whether substantial evidence of disability exists, the Court

must consider four elements of proof: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, then they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). Only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. If the Court finds substantial evidence to support the Commissioner's decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).

### IV.   DISCUSSION

Plaintiff claims the ALJ erred at step three of her analysis in two ways.  First, Plaintiff claims the ALJ incorrectly determined that she is not *per se* disabled under listing 1.04, Disorders of the Spine, due to her diagnosis of degenerative disc disease and the resultant limitations caused by such condition that she argues are supported by the medical records. Second, Plaintiff claims the ALJ's RFC determination is not supported by substantial evidence given Plaintiff's testimony and the medical records.

**A. Listing 1.04 "Disorders of the Spine"**

The ALJ determined that Plaintiff did not meet all the requirements for a *per se* disability under listing 1.04. (Tr. 14). Such listing states:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04. Plaintiff argues that she has nerve root compression and lumbar spinal stenosis and therefore meets the requirements to be classified as *per se* disabled under this listing. (Pl's Br., ECF 14 at 1; Pl's Reply, ECF 19 at 2–5). Thus, Plaintiff asserts she meets this listing under both subsection (A) and subsection (C).

At step three of the evaluation process, Plaintiff has the burden of establishing that her impairment meets or equals the criteria for presumptive disability described in the listings. *Whitehead v. Colvin*, 820 F.3d 776, 780–81 (5th Cir. 2016) (citing *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991)). "For a claimant to show that his impairment matches a listing, it must meet

*all* of the specified medical criteria." *Id.* at 781 (emphasis in original) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). In other words, Plaintiff must show more than nerve root compression under subsection (A) or lumbar spinal stenosis under subsection (C). *See id*. at 781. To qualify as *per se* disabled under subsection (A), she must also indicate that the ALJ erred in determining any nerve root compression did not also result in motor loss accompanied by sensory or reflex loss *and* positive straight-leg raising tests and the other requirements of that subsection. *See Sullivan*, 493 U.S. at 530. To qualify as *per se* disabled under subsection (C), she must indicate that the ALJ erred in determining any lumbar spinal stenosis did not also result in Plaintiff's inability to ambulate effectively and the other requirements of that subsection. *See id*.

Plaintiff underwent an MRI of the lumbar spine on May 11, 2017. The results indicated at the L3-L4 disc a "small shallow broad-based annular disc bulge … contributes to *moderate right-sided inferior neural forminal stenosis* with right forminal disc protrusion/extrusion impinging upon the undersurface of *the transiting right L3 nerve root*." (Tr. 505–506) (emphasis added). These notations in her medical record form the basis of Plaintiff's objections to the ALJ's findings under this listing. (Pl.'s Br., ECF 14 at 1; Pl.'s Reply, ECF 19 at 4–5). The ALJ thoroughly discussed Plaintiff's degenerative disc condition and recognized these findings in her conclusions. (Tr. 14–17). Specifically, the ALJ mentioned the nerve root compression and spinal stenosis, but also noted that these conditions only moderately limited her lumbar range of motion and only occasionally resulted in positive straight-leg raising tests. (*Id*. at 15–16). Further, the ALJ noted that Plaintiff was able to ambulate without an assistive device. (*Id*.).

Thus, the ALJ specifically considered *all* the requirements of each subsection in determining whether Plaintiff was *per se* disabled as a result of her degenerative disc disease and further considered whether Plaintiff's additional medical conditions rose to the severity of a listing.

An ALJ applies the proper legal standards in evaluating a listing when she identifies and discusses which elements under a specific listing are not demonstrated by medical evidence in the record. *See Zepeda v. Berryhill*, No. EP-17-CV-267-MAT, 2019 WL 1369947, at *3 (W.D. Tex. Mar. 26, 2019). Here, the ALJ acknowledged the specific listing in question, set forth the requirements for such listing, and analyzed the medical evidence to determine if Plaintiff met all requirements of any subsection of such listing. The ALJ specifically determined that Plaintiff failed to meet her burden to prove "nerve root compression, spinal arachnoiditis or lumbar spinal stenosis *as required under the listing*." (Tr. 14). As such, the ALJ properly applied the legal standards to the medical evidence in this case. Even if the ALJ did not specify which element of a subsection Plaintiff failed to prove, without evidence in the medical record that shows Plaintiff meets all the requirements of a specific subsection, Plaintiff cannot show that her substantial rights were affected by any such procedural error of the ALJ. *See Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988)). Thus, the ALJ did not err in her determination that Plaintiff is not *per se* disabled.

    **B. Substantial Evidence to Support RFC and Credibility Assessment**

Specifically, Plaintiff claims that the ALJ's determination that she is not disabled as a result of her impairments fails to account for all of her medical conditions and the resulting limitations, rejects the medical opinions of Dr. Robins and Dr. Sapin, and does not account for an accurate interpretation of her testimony. (Pl's Br., ECF 14 at 3).

"The term 'disability' means [ ] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Zepeda*, 2019 WL 1369947, at *4 (citing 42 U.S.C. § 423(d)(1)(A)). When determining whether a claimant is disabled at the third step of the sequential evaluation process,

the ALJ determines whether the medical evidence meets or equals the criteria of a listed impairment in Appendix 1 to Subpart P of Part 404 of the Regulations and meets the duration requirement. *Id.* (citing 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii)). To meet the duration requirement, the impairment must have lasted or must be expected to last for a continuous period of at least twelve months, unless it is expected to result in death. *Id.* (citing 20 C.F.R. §§ 404.1509 & 416.909).

"A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptom ...." *Id.* at *5 (citing 20 C.F.R. §§ 404.1508 & 416.908 (1991)). "The Listing of Impairments in Appendix 1 describes conditions and impairments that are sufficiently severe to prevent an individual from engaging in any gainful activity, not just 'substantial gainful activity,' regardless of age, education or work experience." *Id.* (citing 20 C.F.R. §§ 404.1525(a) & 416.925(a); *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). Plaintiff is automatically entitled to benefits if her impairment meets the duration requirement and meets or equals the criteria of one of the listed impairments. *Zepeda*, 2019 WL 1369947, at *4 (citing 20 C.F.R. §§ 404.1520(d) & 416.920(d)). Because the Listings "were designed to operate as a presumption of disability that makes further inquiry unnecessary," the medical criteria of the Listings are set at "a higher level of severity" than the statutory disability standard. *Id.* (citing *Zebley*, 493 U.S. at 532).

The opinion of the treating physician, who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with …

9

other substantial evidence." *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (citing 20 C.F.R. § 404.1527(d)(2)). The opinion of a specialist generally is accorded "greater weight than that of a non-specialist." *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994). An ALJ is "not required to give controlling weight to a treating physician opinion when … 'there is competing first-hand medical evidence.'" *Walker v. Barnhart*, 158 Fed. Appx. 534, 535 (5th Cir. 2005) (quoting *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)). If the ALJ performed her role in weighing conflicting evidence and resolving the conflict, the court should then perform its limited role of ensuring that substantial evidence supports the ALJ's opinion and not reweighing that evidence. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Plaintiff asserts that the ALJ did not give proper weight to the opinions of Dr. Robins and Dr. Sapin. (Pl.'s Br., ECF 14 at 3). However, in this instance the ALJ had several medical opinions to weigh and she did so with thorough analysis. (Tr. 14–18). If the ALJ's opinion is supported by evidence in the record, even if this Court would reach an opposite conclusion based on the evidence, this Court cannot substitute its judgment for the Commissioner's judgment. Thus, the Court finds that the ALJ's determination of Plaintiff's functional capacity is supported by medical evidence in the record. Specifically, the ALJ gave "great weight" to the medical opinions of Dr. Cunningham and largely based the RFC on his findings and opinion. (*Id.* at 17).

Plaintiff asserts that her testimony about the intensity, persistence and functionally limiting effects of her symptoms are substantiated by the objective medical evidence alone. (*Id.*). Here, the ALJ considered both Plaintiff's own testimony with respect to concentration, persistence, and pace, as well as the objective medical evidence, and determined that the objective findings failed to provide strong support for Plaintiff's allegations. (*See* Tr. 15–19). The ALJ expressly considered the opinions of consultative medical examiner Keith Cunningham, M.D., whose opinion was given

10

great weight, state agency medical consultants Donald Robins, M.D. and Neil Sapin, M.D., whose opinions were given partial weight, and treating physician Dr. Ryan Stratford, M.D., whose opinion was given no weight as it only related to her limitations for a three-month period following surgery. (*Id.* at 16–18). Accordingly, in determining Plaintiff's RFC, the ALJ determined "the overall evidence indicates that while the claimant's condition restricts her ability to perform work-related activity, her condition does not preclude all work activity." (*Id.*).

"The ALJ is not required to show that the RFC is compatible with all of a claimant's self-reported symptoms, but instead to evaluate that testimony in the context of objective medical evidence and determine the remaining capacity for work." *Crista B. v. Berryhill*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4 (N.D. Tex. June 19, 2019), *adopted by* No. 1:18-CV-042-C-BP, 2019 WL 2996021 (N.D. Tex. July 9, 2019) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)); *Sean G. v. Berryhill*, No. 1:18-CV-13-BL, 2019 WL 1261311, at *3 (N.D. Tex. Feb. 28, 2019), *adopted by* No. 1:18-CV-13-C-BL, 2019 WL 1255213 (N.D. Tex. Mar. 19, 2019). "[T]o upset that determination, plaintiff must show that no reasonable person could find support in the record for the RFC assessed by the ALJ, not only that some conflict might appear to exist between a claimant's purported symptoms and the RFC." *Crista B.*, No. 1:18-CV-00042-BP, 2019 WL 2996553, at *4; *Sean G.*, No. 1:18-CV-13-BL, 2019 WL 1261311, at *3.

Plaintiff claims the ALJ's credibility determination is not supported by substantial evidence and that the ALJ took her testimony and written statements out-of-context. (Pl.'s Br., ECF 14 at 4). When evaluating a plaintiff's subjective evidence and credibility, the ALJ is required to follow a two-step process. *See Salgado v. Astrue*, 271 F. App'x 456, 458 (5th Cir. 2008). First, the ALJ must determine whether there is an impairment that reasonably produces the symptoms of which a plaintiff complains. *Id*. If the ALJ identifies an impairment, then the ALJ must consider the

plaintiff's statements about symptoms and the remaining evidence in the record to determine the strength of the symptoms and how the symptoms affect the plaintiff's ability to do basic work. *Id*. An ALJ may find those complaints "are not credible or exaggerated in light of the objective medical and other evidence of record." *Hearing v. Comm'r*, S.S.A., No. 4:17-CV-242, 2018 WL 4561620, at *4 (E.D. Tex. Sept. 24, 2018). The ALJ expressly stated in her decision that Plaintiff's testimony regarding "the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record ..." (Tr. 18). An ALJ must give reasons for rejecting a plaintiff's subjective testimony only where the objective medical evidence clearly favors the plaintiff. *Crossley v. Astrue*, No. 3:07-CV-0834-M, 2008 WL 5136961, at *3 (N.D. Tex. Dec. 5, 2008) (J. Lynn) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)); *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988).

Second, Plaintiff argues the ALJ misconstrued her testimony concerning her daily activities and took other statements out of context. The ALJ found Plaintiff "reported that she prepared meals, did laundry, vacuumed the floor, dusted, fed the dogs, drove, and went grocery shopping." (Tr. 18). Further, the ALJ assessed Plaintiff's testimony to include "attending Bingo once a month, visiting her parents, and going fishing occasionally." (*Id*.). Plaintiff finds fault with the ALJ's statement that she was caring for her disabled *father* at the time of the hearing, when in fact, Plaintiff was caring for her disabled *husband*. (Pl.'s Br., ECF 14 at 4). This error was harmless as it does not affect the ALJ's comparison of her testimony to the objective medical evidence. Such a credibility assessment is well within the province of the ALJ, and the Court cannot reweigh the evidence. *Falco*, 27 F.3d at 164. "It is within the ALJ's discretion to determine the disabling nature of a claimant's pain," and this determination should be accorded "considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). This Court should not second-guess

a credibility determination so long as substantial evidence supports the ALJ's ultimate finding. *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (citing *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015)).

## V.  RECOMMENDATION

It is the recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff LISA C. not disabled and not entitled to disability benefits be AFFIRMED and that her complaint be DISMISSED WITH PREJUDICE.

## VI.  INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these findings, conclusions and recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 11, 2019.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

### * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal

conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).